CHRISTOPHER B. KENNEDY *v.* LEANNA L. KENNEDY
(AC 27274)
(AC 28217)

Lavine, Robinson and Stoughton, Js.

Argued March 17—officially released August 5, 2008

*Christopher B. Kennedy*, pro se, the appellant (plaintiff).

*Ira A. Jacobs*, for the minor child, Kathleen Kennedy.

*Jacqueline A. Wilson*, for the minor child, Brenna Kennedy.

*Opinion*

LAVINE, J. These consolidated appeals are two in a series brought by the pro se plaintiff, Christopher B. Kennedy.[1] The appeal form for AC 27274 indicates that the plaintiff is appealing from the decision of the trial court filed December 22, 2005. The appeal form for AC 28217 indicates that the plaintiff is appealing from the decision of the trial court rendered on October 23, 2006. Both of the plaintiff's appeals raise jurisdictional questions. On December 22, 2005, the court, *Swords, J.*, issued an order concerning the plaintiff's right to visit with his minor children. Since that time, the visitation order at issue in AC 27274 has been superseded by further orders of the court, *Shluger, J.* The order of October 23, 2006, at issue in AC 28217, concerns the appointment of counsel to represent one of the parties' minor children,[2] which is an interlocutory order. We therefore dismiss AC 27274 as moot and AC 28217 for lack of a final judgment.

These appeals present this court with procedural challenges. The plaintiff's briefs do not state clearly the issues to be considered in either appeal, as the issues are generally expressed in phrases, not sentences, using

---

[1] Our computerized research generated fourteen citations to judgments rendered by this court or our Supreme Court. We are aware of one additional appeal that is pending in this court. Generally, the appeals concern the plaintiff and his interaction with his children and his right to custody and visitation.

[2] The parties have three children. Their oldest child, Sean Kennedy, has reached the age of majority. Any claims related to the plaintiff's rights to custody and visitation with his son are moot. The parties' minor children, Kathleen Kennedy and Brenna Kennedy, are each represented by counsel. The minor children also have the benefit of a guardian ad litem.

words invoking rights emanating from the federal constitution and our General Statutes and rules of practice.[3] The briefs are devoid of clear, concise statements of the issues and procedural and factual histories as required by our rules of practice.[4] The defendant, Leanna L. Kennedy, failed to file a brief. Counsel for the parties' minor daughters filed briefs representing that the issues on appeal did not implicate the rights of the minor children, that they are uncertain of the plaintiff's claims, and, in one instance, counsel represented that because she had not yet been appointed at the times in question she could not address the claims.[5]

Despite the lack of specificity in his briefs, the plaintiff claimed, at oral argument, that he had been denied certain federal constitutional and statutory rights and that certain orders of the trial court violated our statutes

---

[3] In AC 27274, the plaintiff's statement of the issues sets forth: "[1] improper service, denied due process and equal protection, 2. denied rights to counsel, 3. denied rights to disability accommodations, 4. failure to consider [General] Statutes § [§] 46b-56, 56A & 120, 5. ruling against the evidence [and] 6. impossible orders, prejudice and discrimination by the court."

In AC 28217, the plaintiff's statement of the issues sets forth: "1. improper service, denied due process and equal protection and prejudice and discrimination by the court." Moreover, the issues were not adequately briefed; the brief is four pages long.

To the extent that the plaintiff claims that his parental rights have been terminated without the benefit of legal representation provided by the state, we summarily reject such claim or claims. The plaintiff's parental rights have not been terminated nor could they be within the context of an action for the dissolution of marriage, even when the issues concern the custody and visitation rights of the parties. Court-ordered limitations on visitation do not result in the termination of parental rights.

[4] Although the organization of the plaintiff's briefs comports with our rules of practice; see Practice Book c. 67; the briefs lack the particularity required by Practice Book § 67-4 (c) and (d) (4) and (5). In his briefs, the plaintiff referred to numerous motions, but he neglected to identify the motions by docket number or the dates of the rulings thereon.

[5] Pursuant to order of this court, counsel for the parties' daughters appeared at oral argument but, as our review of the entire file disclosed, did not inform us of significant changes in the plaintiff's visitation rights that have occurred pursuant to orders of the trial court while these appeals were pending.

and rules of practice in a manner that was prejudicial to him as a father with attention deficit disorder. Given the serious nature of the plaintiff's allegations pertaining to his constitutional, statutory and parental rights, we undertook an extensive review of the two volume file, the available transcripts and all of the published opinions from prior appeals concerning the parties in order to comprehend the factual and procedural history underlying these appeals. See *Syragakis* v. *Syragakis*, 79 Conn. App. 170, 175, 829 A.2d 885 (2003) (court may take judicial notice of file).

Our review disclosed that the parties were married in 1988 and are the parents of three children. See footnote 2 of this opinion. In April, 2001, the plaintiff commenced an action seeking a judgment of dissolution, which was rendered in May, 2002. The dissolution judgment incorporated the parties' agreement for joint legal and physical custody of their children and a fifty-fifty shared parenting plan. In June, 2002, the defendant filed a motion to modify custody, visitation and support. On February 4, 2003, the court, *Graziani, J.*, "clearly" found that the shared parenting plan was not working and was no longer in the best interests of the children. The court also found a substantial change in circumstances and awarded the defendant sole custody of the children, subject to reasonable rights of visitation in the plaintiff.

Despite the modification, things did not go well for the parties and especially for their children. Restraining orders against the plaintiff were issued pursuant to General Statutes § 46b-15. See *Putman* v. *Kennedy*, 279 Conn. 162, 900 A.2d 1256 (2006);[6] *Putman* v. *Kennedy*, 104 Conn. App. 20, 932 A.2d 439 (2007) (reversing judgment as to plaintiff's daughters); *Putman* v. *Kennedy*, 104 Conn. App. 26, 932 A.2d 434 (2007) (affirming judgment as to plaintiff's son), cert. denied, 285 Conn. 909,

---

[6] The defendant's maiden name was restored pursuant to the judgment of dissolution.

940 A.2d 809 (2008). In April, 2004, as a result of criminal charges filed against him, the court, *White, J.*, issued a criminal protective order against the plaintiff, prohibiting him from having any contact with his children.[7]

On May 5, 2004, attorney Susan Lee Heintz entered her appearance as the guardian ad litem for the parties' children. On June 14, 2004, Judge Graziani ordered that "the parties shall each submit to a full psychological evaluation subject to the terms and conditions as outlined in the agreement of the parties." David M. Mantell, a clinical psychologist, was appointed to conduct the psychological evaluation. On September 10, 2004, Heintz filed a motion in which she represented that Mantell had completed his evaluation of the children and requested that Mantell be permitted to evaluate the children with each of the parties. Heintz requested that "any restraining orders be modified so that the children and parents can be evaluated by Dr. Mantell." On October 12, 2004, the court, *Solomon, J.*, agreed to a modification of the criminal protective order so that the plaintiff could participate in the psychological evaluation with Mantell.

In December, 2005, a jury found the plaintiff not guilty of the criminal charges pending against him, and the criminal protective order expired by its own terms. The plaintiff believed, as a result of the not guilty verdict, that his right to visit with his children would revert to Judge Graziani's order of February 4, 2003. On December 22, 2005, an emergency hearing was held to consider a motion for an order filed by the defendant. The defendant requested that the court adopt Mantell's recommendation that the plaintiff's visitation with the parties' daughters be supervised. Following the hearing at which Heintz testified, Judge Swords ordered that the

---

[7] The criminal charges arose out of an alleged altercation between the plaintiff and the parties' son.

plaintiff have one hour of supervised visitation with his daughters per week but no visitation with his son. The plaintiff appealed from the order modifying his right to visit with his children, which is docketed as AC 27274.

Thereafter, on June 29, 2006, Judge Swords granted the motion for appointment of counsel for the minor children filed by Heintz.[8] Attorney Ira A. Jacobs was appointed to represent the parties' children.[9] During the course of his discussions with the daughters, Jacobs learned that the girls' individual wishes with respect to visiting with the plaintiff were inconsistent with each other. He concluded that ethically he could not represent both of them and filed a motion for advice. On October 23, 2006, Judge Swords ordered the appointment of additional counsel so that each of the daughters had her own counsel. The defendant appealed from that order, which appeal is docketed as AC 28217.

## I

### AC 27274

The plaintiff's appeal is taken from the December 22, 2005 order of the court limiting his visitation to one hour of supervised visitation with his daughters per week. We dismiss the appeal as moot.

Following oral argument before us on March 17, 2008, we undertook an extensive review of the trial court file and this court's pending docket. We took judicial notice;

---

[8] The plaintiff appealed from the postjudgment order appointing counsel for the minor children. This court sua sponte ordered the parties to appear at the court's motion calendar and to give reasons, if any, why the appeal should not be dismissed for lack of a final judgment. See *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983); see also *Bucy* v. *Bucy*, 19 Conn. App. 5, 7–8, 560 A.2d 483 (1989). The appeal was dismissed for lack of a final judgment. See *Kennedy* v. *Kennedy*, 282 Conn. 916, 924 A.2d 138 (2007) (certification denied).

[9] Initially, Jacobs represented all three of the parties' children. Judge Shluger vacated the order of representation as to the parties' son, who had become eighteen years old.

see *Syragakis* v. *Syragakis*, supra, 79 Conn. App. 175; that more than 100 items had been docketed in the trial court file since Judge Swords issued the subject visitation order on December 22, 2005. We also took notice of at least one appeal that has been filed in this court subsequent to the appeals at issue in this opinion. Our further review of the trial court file disclosed a memorandum of decision dated and noticed to the parties on April 4, 2008. That memorandum of decision by Judge Shluger was a ruling on the plaintiff's motion for articulation and clarification concerning the court's orders dated June 26, 2007, September 5, 2007, November 15, 2007, and January 9, 2008. In his decision, Judge Shluger stated in part: "In each of the four decisions which this court has rendered, of which the plaintiff seeks clarification and articulation, the court has consistently and progressively expanded and enlarged the plaintiff father's access to the children."[10]

Although Judge Shluger had expanded the plaintiff's visitation with his daughters, neither the plaintiff nor

---

[10] Judge Shluger's April 4, 2008 memorandum of decision contains the following recitation of facts: "On June 26, 2007, the court relieved the family of the previously ordered psychological evaluation, replaced AMPS [Inc.] with Kidsafe [CT], a more relaxed and flexible supervisor of visits which permits off-site visitation, expanded the one hour Wednesday visits to two hours, permitted telephone, e-mail, regular mail, permitted visits at the [plaintiff's] home and permitted the [plaintiff] to attend academic and extracurricular activities with the children. . . .

"On September 5, 2007, the court . . . again expanded the [plaintiff's] visits to permit unsupervised visits for the first time in several years and ordered that the [plaintiff] would be entitled to copies of all school and medical records of the children.

"On November 15, 2007, the court again expanded the Wednesday visits and authorized an expanded unsupervised visit, the day after Christmas, from 10 a.m. until 6 p.m. The court expanded e-mail contact and cellular telephone contact with the children.

"On January 11, 2008, the court again expanded visitation wherein Kidsafe [CT] was removed from the scenario and the girlfriend of the [plaintiff] and the boyfriend of the [defendant] would facilitate the transition of the children. The [plaintiff] was granted an unsupervised visit with the children on January 20, 2008, from 10 a.m. to 6 p.m. to coincide with his new son's birthday."

counsel for either of the minor children brought this change of circumstances to our attention at the time of oral argument. Thereafter, we issued sua sponte an order for supplemental briefs, asking the plaintiff and counsel for the minor children why the appeal should not be dismissed as moot.[11] In their supplemental briefs, neither the plaintiff nor either counsel for the minor children provided any legal analysis as to why the appeal should not be dismissed as moot, although they acknowledged that the plaintiff's visitation with his daughters had been enlarged since December 22, 2005.

Even though the issue of mootness was not raised in the briefs or at oral argument, this court has a duty to consider it sua sponte "because mootness implicates the court's subject matter jurisdiction. It is, therefore, a threshold matter to resolve." (Internal quotation marks omitted.) *In re William D.*, 97 Conn. App. 600, 603, 905 A.2d 696 (2006), aff'd, 284 Conn. 305, 933 A.2d 1147 (2007). "Subject matter jurisdiction [implicates] the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of

[11] The order for supplemental briefs stated: "Subsequent to oral argument held on March 17, 2008, this court took judicial notice of the ongoing litigation in the underlying matter. See *Syragakis* v. *Syragakis*, [supra, 79 Conn. App. 175]. The panel notices several orders of the trial court modifying the plaintiff's visitation with his daughters. Those orders are summarized in the trial court's memorandum of decision dated April 4, 2008, in response to the plaintiff's motion for articulation and clarification, trial court docket [number] 388. The appellant and counsel for the minor children are hereby ordered to file simultaneous supplemental briefs of no more than ten pages on or before May 23, 2008, giving reasons, if any, why the appeal taken from the trial court's December 22, 2005 order, trial court docket [number] 289, challenged in AC 27274 should not be dismissed as moot as that order has been superseded or modified. See, e.g., *In re Steven M.*, 264 Conn. 747, 754, 826 A.2d 156 (2003)."

The plaintiff requested additional time in which to file his supplemental brief. This court granted him ten additional days to do so.

want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 802, 925 A.2d 292 (2007).

"When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *In re Steven M.*, 264 Conn. 747, 754, 826 A.2d 156 (2003). "It is axiomatic that if the issues on appeal become moot, the reviewing court loses subject matter jurisdiction to hear the appeal. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal." (Internal quotation marks omitted.) *Bornemann* v. *Connecticut Siting Council*, 287 Conn. 177, 181–82, 947 A.2d 302 (2008).

As the plaintiff concedes, subsequent to Judge Swords' December 22, 2005 order regarding the plaintiff's right to visit with his daughters, Judge Shluger expanded the amount of time and the circumstances under which the plaintiff may visit with his daughters. Given that Judge Swords' order has been superseded and is no longer in effect, this court is not able to afford the plaintiff any practical relief. Because the appeal is

moot, subject matter jurisdiction is lacking. See *Carpenter* v. *Carpenter*, 7 Conn. App. 112, 113 n.2, 507 A.2d 526 (1986).

We therefore dismiss AC 27274.

## II

## AC 28217

This appeal was taken from Judge Swords' order appointing separate counsel for each of the parties' minor daughters. The plaintiff claims "improper service, denied due process and equal protection and prejudice and discrimination by the court." We dismiss the appeal for lack of a final judgment.

The record reveals that on October 18, 2006, Jacobs, who had been appointed to represent the parties' minor children, filed a "motion for order and motion for advice postjudgment." In his motion, Jacobs represented, among other things, that on June 29, 2006, he was appointed to represent the minor children of the parties; on July 18, 2006, via a letter, Jacobs informed the parties that he at one time had served as a temporary assistant clerk to the court, *J. Kaplan, J.*;[12] on September 27, 2006, pursuant to the Rules of Professional Conduct, he filed a motion stating that the parties' daughters were expressing contradictory and opposing positions that materially limited his ability to represent both of them; and that on October 17, 2006, Jacobs received a letter from the plaintiff requesting that he immediately withdraw from this matter, given his relationship with Judge Kaplan.

Judge Swords heard argument on Jacobs' motion from the plaintiff, Jacobs, Heintz and counsel for the defendant on October 23, 2006. During the proceedings,

---

[12] The transcript of the proceeding on October 23, 2006, contains a representation by Heintz that Jacobs had served as a clerk in the early 1990s.

the plaintiff stated that he was concerned about a conflict of interest between Jacobs and Judge Kaplan.[13] The transcript of the proceeding reveals, however, that the primary focus of the proceeding concerned how to resolve the need to appoint counsel for both girls, given their different needs and personalities, and to abide by Mantell's advice that they be shielded from multiple evaluations and the introduction of new professionals.[14] At the conclusion of the proceedings, Judge Swords ordered that Jacobs continue to represent the older daughter and that new counsel be appointed for the younger one. Judge Swords also ruled that "the relationship that [the plaintiff] put on the record to support his claim of conflict of interest is insufficient to show a conflict of interest between Judge Kaplan and . . . Jacobs."

The transcript of October 23, 2006, also reveals that the plaintiff interrupted the proceedings to inquire about motions he had filed to enlarge his visitation rights and why the case had not been transferred from the judicial district of Tolland to the regional family trial docket. Judge Swords informed the plaintiff that his motions were not before the court at that time and explained why the case could not be transferred to the regional family trial docket.

On the basis of our review of the plaintiff's principal brief, we discern that his complaint is not with the court's having appointed counsel for each of his daughters but is based on his perception that his motions regarding a change in visitation were not being heard and that the judges and staff of the Tolland judicial

[13] During the October 23, 2006 proceeding, the plaintiff stated to Judge Swords that he had filed a grievance and criminal complaints against Judge Kaplan. He also stated that he had filed a federal lawsuit against both Judge Kaplan and Judge Swords.

[14] At the time, the older daughter was thirteen years old and the younger one ten years old.

district did not accord him due process and equal protection. The record before us does not disclose that any motions other than Jacobs' motion for an order and for advice were before Judge Swords on October 23, 2006. Moreover, we can find no record of the plaintiff's having had his claims concerning his perception of the lack of due process and equal protection heard by the court on that day. As to the conflict the plaintiff alleges between Judge Kaplan and Jacobs, in his brief the plaintiff merely mentions that Judge Swords found that there was no conflict of interest. He does not claim that the court's finding was clearly erroneous or constituted any other type of impropriety. If the plaintiff had any issue with Judge Swords' finding that there was no conflict of interest between Jacobs and Judge Kaplan, he has abandoned any such claim by failing to brief the issue adequately. See *Baker* v. *Baker*, 95 Conn. App. 826, 833, 898 A.2d 253 (2006).

Following oral argument on March 17, 2008, this court sua sponte issued the following order: "[t]he appellant and counsel for the minor children are hereby ordered to file simultaneous supplemental briefs of no more than ten pages on or before May 23, 2008, giving reasons, if any, why the appeal taken from the trial court's order of October 23, 2006, challenged on appeal in AC 28217, should not be dismissed for lack of a final judgment."[15] This order required the plaintiff and counsel for the minor children to analyze whether this court has subject matter jurisdiction over an appeal challenging the appointment of counsel to represent one of the minor children in a custody and visitation dispute postjudgment. None of the supplemental briefs provide legal support for the proposition that this court has subject matter jurisdiction as to this appeal.

---

[15] The plaintiff requested additional time in which to submit his brief, and this court granted him an additional ten days in which to do so.

As our Supreme Court repeatedly has observed, "[t]he right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . Moreover, [t]he statutory right to appeal is limited to appeals by aggrieved parties from final judgments. . . . Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 194, 884 A.2d 981 (2005).

The test for determining whether an appeal challenges a final judgment is set forth in *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983). "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. The present appeal satisfies neither prong of the *Curcio* test.

Although an order modifying custody and visitation postdissolution is an appealable final judgment; see, e.g., *Ford* v. *Ford*, 68 Conn. App. 173, 181, 789 A.2d 1104, cert. denied, 260 Conn. 910, 796 A.2d 556 (2002); *Kelly* v. *Kelly*, 54 Conn. App. 50, 55–56, 732 A.2d 808 (1999); in this case, the dispute over the modification of custody and visitation is ongoing, as motions to modify filed by the plaintiff have not yet been adjudicated.[16] In a dissolution action in which custody and visitation are at issue, the court may appoint counsel to represent a minor child to protect the best interest of the child.

---

[16] Our review of the various transcripts reveals that a hearing on the plaintiff's motions to modify custody and visitation are dependent in part on the completion of the psychological evaluation and the opportunity for counsel for the minor children to meet with their clients.

See General Statutes § 46b-54 (a) and (b);[17] Practice Book § 25-24.[18] "The purpose of appointing counsel for a minor child . . . is to ensure independent representation of the child's interests, and such representation must be entrusted to the professional judgment of appointed counsel within the usual constraints applicable to such representation." (Internal quotation marks omitted.) *Ireland* v. *Ireland*, 246 Conn. 413, 436, 717 A.2d 676 (1998). In this case, appointing counsel for both daughters is "merely a step along the road"; *State* v. *Parker*, 194 Conn. 650, 653, 485 A.2d 139 (1984) (superseded by statute on other grounds; see *State* v. *Fanning*, 98 Conn. App. 111, 112 n.1, 908 A.2d 573 [2006], cert. denied, 281 Conn. 904, 916 A.2d 46 [2007]); to a final judgment resolving the custody and visitation issues. Moreover, the plaintiff has failed to explain why his objection cannot be vindicated on appeal from a final judgment resolving the custody and visitation dispute. Because the appointment of counsel for each of the parties' minor children is not a final judgment, we lack subject matter jurisdiction, and the appeal must be dismissed.

The appeals are dismissed.

In this opinion the other judges concurred.

---

[17] General Statutes § 46b-54 provides in relevant part: "(a) The court may appoint counsel for any minor . . . children of either or both parties at any time . . . if the court deems it to be in the best interests of the . . . children. . . . (b) Counsel for the . . . children may also be appointed . . . in any case before the court when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy . . . ."

[18] Practice Book § 25-24 (a) provides in relevant part: "Any appropriate party may move for . . . appointment of counsel for the minor child . . . ."